UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | |
|---|---|
| BLAKE ESTRADA individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>MULHOLLAND ENERGY SERVICES, LLC<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§ Case No.: 7:20-cv-00140<br>§<br>§<br>§<br>§<br>§ |

ESTRADA'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

Respectfully submitted,

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
Texas Bar No. 24001807
11 Greenway Plaza, Suite 3024
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

**Fitapelli & Schaffer, LLP**
Frank J. Mazzaferro, *pro hac vice*
29 Liberty Street, 30th Floor
New York, New York, 10005
Telephone: (212) 300-0375
fmazzaferro@fslawfirm.com

**1.    INTRODUCTION AND SUMMARY.**

Blake Estrada ("Estrada" or "Plaintiff") alleges Mulholland Energy Services, LLC ("Mulholland" or "Defendant") violated the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA") by failing to pay overtime to certain hourly employees. After nearly two years of litigation, discovery, information exchanges, negotiations, and multiple mediations, the parties executed the attached Settlement Agreement and Release. *See* Exhibit 1, Settlement Agreement and Release ("Settlement" or "Settlement Agreement").

The Settlement will provide significant relief to the existing plaintiffs and the Eligible Class Members (as defined in the Settlement). Because the proposed Settlement is fair and reasonable, it should be preliminarily approved and presented to the members of the New Mexico class.

**2.    BACKGROUND.**

On June 1, 2020, Estrada brought this case as a nationwide FLSA collective action based on Mulholland's failure to pay overtime to certain of its hourly employees. The Parties stipulated to the issuance of FLSA notice to Wash Crew Hands who worked for Mulholland during the 3-year period prior to the Court's approval of the stipulation. *See* ECF No. 17. This Court approved the Parties' stipulation on October 16, 2020. Over 100 workers (the "Opt-Ins") joined this Action.

Between July 21, 2021, and March 9, 2022, the Parties attended two mediations. After the second mediation failed, the parties continued exchanging documentation and negotiating the merits of the claims and defenses. In late 2022, the Parties agreed to the material terms of a settlement. Mulholland provided Estrada with a Memorandum of Understanding reflecting the terms of the settlement. The Parties now seek approval of the Settlement from this Court.

**3.    SUMMARY OF THE SETTLEMENT TERMS**

The Settlement calls for Mulholland to pay up to $700,000 (the "Gross Settlement Amount") into a Qualified Settlement Fund ("QSF"). Subject to this Court's approval, this QSF and the

Settlement will be administered by ILYM Group. The Gross Settlement Amount consists of: 1) $10,000 to Estrada for his efforts in bringing and prosecuting this Action; 2) $280,000 (40% of the Gross Settlement Amount) to Class Counsel to compensate Class Counsel for all work performed in the Action to date and in the future.; 3) up to $16,000 to Class Counsel in out-of-pocket costs and litigation expenses; 4) $10,000 for payment to the Settlement Administrator for Settlement administration costs and expenses; and 5) (at least) $394,000 allocated to payment of Settlement Awards to Settlement Class Members.

As part of the Settlement, the parties seek certification of a Rule 23 class under New Mexico law. The State Law Class is:

> All current and former hourly employees who held the position of a Rig Technicians, also known as wash crew members for Defendant Mulholland Energy Services LLC ("Mulholland") and performed work at any time between June 1, 2017 and [date of the Court's approval order] (the "Class")

There are approximately 330 Class Members. Should the Court approve the Settlement, a Notice of Settlement will be sent by mail to all Class Members who are not already Opt-Ins. The Notice of Settlement will inform Class Members about the Settlement, their opportunity to participate in the Settlement, object, or opt-out.

4.   **THE COURT'S ROLE IN THE APPROVAL PROCESS.**

   **A. Settlement Approval Under Rule 23.**

The Supreme Court approved the use of settlement classes. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but Rule 23's other requirements must still be satisfied. *Id.* at 620. Thus, any request for preliminary approval of a class settlement should address why certification would be appropriate, albeit within the context of a settlement.[1]

---

[1] Mulholland does not agree class certification would be appropriate absent a settlement.

2

While "Rule 23 … wisely requires court approval of the terms of any settlement of a class action, . . . the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). Thus, this Court has an important, though limited, role in the approval of "a proposed settlement in a class action." *Frew v. Hawkins*, 2007 WL 2667985, at *2 (E.D. Tex. Sept. 5, 2007). In reviewing a proposed settlement, a court "can either approve the … settlement as it was written, obtain the consent of the other two parties to a modified settlement, or reject the settlement." *Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1155 (5th Cir. 1991). It "cannot take the negotiated settlement, strike terms [it] does not like, and then impose it on the parties." *Id.*

### B. Approval of an FLSA Settlement.

"Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Id.*

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). "FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b)." *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D.Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir.1982)). Under *Lynn's Food Stores*, the reviewing court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31,

3

2016) (citing *Lynn's Food Stores*, 679 F.3d at 1355); *Smith v. M-I, LLC*, No. 5-17-CV-00788-FB-RBF, 2019 WL 2620734, at *1 (W.D. Tex. Feb. 26, 2019).

5. **THE PARTIES' FLSA SETTLEMENT SHOULD BE APPROVED.**

   A.  **This Settlement Involves a Bona Fide Dispute Over FLSA Issues.**

Congress recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. See *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945). Due to this unequal bargaining power, courts must ensure the settlement of an FLSA claim must be the product of a bone fide dispute. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (requiring judicial or Department of Labor approval for FLSA settlements and explaining the low standard for judicial review when the parties are represented by counsel); *see also Jeff D.*, 475 U.S. at 726-27 (in deciding whether to accept a proposed settlement, the court asks whether it reflects a "reasonable compromise" of a bona fide dispute).

In this case, the Parties fiercely contested the claims and defenses asserted. While Estrada asserted Mulholland failed to pay overtime pay for all hours worked, including hours spent traveling to and from work sites, Mulholland disagreed. Mulholland argued Class Members were not engaged in work before or after leaving their work sites and, as a result, would not be entitled to compensation for those overtime hours. The Parties further disagreed on whether Estrada could prove Mulholland acted willfully, which in turn affects whether the statute of limitations under the FLSA would cover two years or three years (if willful). *See* 29 U.S.C. § 255. For its part, Mulholland contends any violation (and, again, it asserts there has been no violation) of the FLSA was the result of a good faith error such that no (or at the very least, a reduced) amount of liquidated damages could be recovered. *See* 29 U.S.C. § 260.

It took two mediations, as well as countless discussions between the parties, to bring this case to this point. All the filings, arguments, documentation, hearings, discovery, and motions on file reflect the Settlement is an effort to resolve of a bone fide dispute.

### B. This Settlement Is a Fair and Reasonable Resolution of Disputed Issues.

Where a settlement occurs in the context of a lawsuit, courts typically regard this "adversarial nature … to be an adequate indicator of the fairness of the settlement." *Villeda,* 2009 WL 3233405, at *1.; *Lynn's Food Stores*, 679 F.2d at 1353–54. The settlement agreement was negotiated by experienced attorneys after litigating this case for more nearly two years; it reflects an arms' length compromise of the disputed claims. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) (explaining that in evaluating parties' FLSA settlement "the Court must keep in mind the 'strong presumption' in favor of finding a settlement fair."); *Smith v. M-I, LLC*, No. 5-17-CV-00788-FB-RBF, 2019 WL 2620734, at *1–2 (W.D. Tex. Feb. 26, 2019).

### C. The Requested Attorney's Fees and Costs Are Reasonable

Under the terms of the settlement, Class Counsel will receive attorney's fees equal to 40% of the Gross Settlement Amount and reimbursement for no more than $16,000 in expenses/costs. *See* Settlement at § 13.e. Mulholland agreed to these requests. As the Fifth Circuit has noted, the "customary contingency" for this type of litigation is "35 to 40 percent." *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *see also, Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (approving settlement of FLSA collective action containing 40% fee to class counsel); *Wolfe v. Anchor Drilling Fluids USA Inc*, No. 4:15-CV-1344, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (same). This customary fee is appropriate here and should be preliminarily approved.

**6.      PROVISIONAL CERTIFICATION OF THE STATE LAW RULE 23 CLASS IS APPROPRIATE.**

   **A.  The Proposed New Mexico Class is Sufficiently Numerous.**

The proposed class meets the numerosity requirement. There are approximately 330 members of the New Mexico Class (including current opt-in plaintiffs). The Fifth Circuit has noted that classes as small as 40 can meet the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (*citing Newberg on Class Actions* § 3.05, at 3–25 (3d ed.1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable")). This is particularly true where some "class members still employed by the [defendant] might be reluctant to file individually for fear of workplace retaliation." *Mullen,* 186 F.3d at 624. Thus, the numerosity requirement is easily met.

   **B.  The Commonality Requirement Is Met.**

Next, Rule 23 asks whether there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). The commonality requirement may be satisfied by showing one issue common to all class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) *even a single common question will do*") (cleaned up, emphasis added).

Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092, *6 (N.D. Ill. Feb. 19, 2014).

Here, Mulholland paid all Class Members in the same way. Plaintiff alleges that despite the Class's status as hourly employees entitled to overtime pay, Mulholland failed to pay them for all hours worked in excess of 40 hours in a workweek. This common employment practice creates a common

issue of law and fact that can be resolved by a common answer. And "a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *Dukes*, 564 U.S. at 350. This one common question alone is sufficient to satisfy the commonality requirement. *Dukes*, 564 U.S. at 359.

### C. The Typicality Requirement Is Met

Claims of the class representatives and class members are typical if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). The analysis focuses on whether the named representative's *claims* are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The analysis is "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

Estrada meets the typicality requirement here (at least for settlement purposes) because he, like the Class Members, was not paid overtime wages for all hours worked over 40 because of Mulholland's allegedly illegal policy. *Butler v. Am. Cable & Tel., LLC*, 09 CV 5336, 2011 WL 4729789, at *6 (N.D. Ill. Oct. 6, 2011). In cases involving violations of wage and hour laws, typicality is generally satisfied because the named plaintiffs and class members have been injured by the same course of unlawful conduct. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). Plaintiff's legal claims here are typical of those of the Class because they apply the same legal theory to the same policies and practices.

### D. The Adequacy Requirement Is Met

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). With respect to the class representatives, courts consider the "[1] the zeal and competence of the

7

representatives' counsel and ... [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (*citing Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *In re Reliant Energy ERISA Litig.*, CIV.A. H-02-2051, 2005 WL 2000707, at *3 (S.D. Tex. Aug. 18, 2005). Class counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class." *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5472118, at *2 (W.D. La. Nov. 8, 2012).

Here, Estrada "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Products, Inc.*, 521 U.S. at 625-26 (internal quotation marks omitted). Thus, Plaintiff has the same interests, and asserts the same type of injury, as the New Mexico Class Members he seeks to represent. *Id.* Also, Estrada has shown himself to be an adequate representative of the class, as he has devoted time and effort in prosecuting the claims herein including: (1) assisting counsel with investigating the case; (2) contacting potential witnesses and securing their cooperation with Class Counsel; and (3) assisting with settlement negotiations. He has also demonstrated commitment to Class Members. Plaintiff did not, for example, agree to an overly broad release of claims on behalf of the class members. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the Class Members' release is limited to wage-and-hour claims. Plaintiff adequately represented the Class Members by securing a fair and reasonable settlement.

Further, Plaintiff is represented by counsel with significant experience in handling large scale wage and hour litigation. *See* Exhibit 2, Declaration of Richard J (Rex) Burch; Exhibit 3, Declaration of Frank J. Mazzaferro ("Mazzaferro Decl."). Courts have commended these firms "are experienced

8

and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions[.]" *See, e.g., Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE, 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012); *see also, Howard v. Redline Global, LLC,* No. 21 Civ. 1538 (RAM)(MDM), at 15 (D.R.P.R. April 11, 2023) ("F&S is a nationally recognized employment litigation firm based in New York City that has significant experience prosecuting wage and hour cases.")*; Cormier v. Turnkey Cleaning Servs. LLC*, No. 6:15-CV-2076, 2018 WL 5288824, at *4 (W.D. La. Oct. 22, 2018) (Bruckner Burch's "skill, knowledge, reputation and experience is well-recognized in FLSA cases"); *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (Bruckner Burch's lawyers "are among the most experienced and best regarded in this specialized practice area"); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010)(Bruckner Burch's attorneys "are highly experienced attorneys and have acted as class counsel in similar [wage and hour] actions in federal and state courts"); *Young v. Sea Horse Venture IV, LLC*, 2009 WL 614823, at *3 (N.D. Tex. Mar. 10, 2009) (noting Bruckner Burch's "role in a number of precedent setting labor and employment cases"); Exhibit 3, Mazzaferro Decl. Further, the Parties respectfully submit the size of the settlement, on an aggregate and individual basis, demonstrates Class Counsel have done well for the Class.

### E. Estrada Satisfies Rule 23(b)(3)'s Requirements.

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The proposed settlement meets these standards.

9

### *1)   Predominance of Common Questions*

The predominance inquiry asks if the proposed class is "sufficiently cohesive." *Amchem Products,* 521 U.S. at 623. Cohesion justifies adjudication of numerous claims through the representative class mechanism. *Id.* "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* The inquiry focuses on common questions that can be proved through common evidence. *Id.*

In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Supreme Court elaborated on Rule 23(b)(3)'s standard. The Court noted the predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id.* at 1045. The Court explained the differences between the two sorts of questions, noting that "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* The Court further explained "the predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* When a court determines that "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id. See also Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *10 (E.D. La. Nov. 1, 2016).

Here, the issues related to class-wide liability predominate. The primary issue to be resolved is whether Mulholland's travel time practices violated the NMMWA. The question of Plaintiff's and the proposed Class's right to overtime pay can therefore be determined for the entire class in a single adjudication, without considering a single individualized issue. *See Barragan v. Evanger's Dog & Cat Food*

10

*Co.,* 259 F.R.D. 330, 334 (N.D. Ill. 2009) ("The [state wage and hour law] claim alleged here arises from a uniform type of alleged violation by Defendants, namely, a common practice of failing to pay overtime pay. There can be no question that this alleged common practice will be the principal issue of the litigation.").

### 2) *Superiority of Class Action Method*

A class action is superior to other methods of adjudication in this case. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc.*, 521 U.S. at 617. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the settlement class. The alternative is potentially hundreds of individual lawsuits, piecemeal litigation, and inconsistent adjudications. Without a class, the Court would have to hear many additional individual cases raising identical questions of liability. "Requiring the class members to bring separate lawsuits would waste judicial resources, limit judicial access to the courts, and create a problem of inconsistent judgments." *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1079 (W.D. Pa. 1991); *Amchem Products, Inc.,* 521 U.S. at 617 (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all' "); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.2004) (noting that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton County Public Defender Commission*, 560 F.3d 592, 619 (6th Cir. 2007). Under these circumstances, case-by-case resolution of Class Members' claims "would constitute an uneconomical use of judicial resources as well as an inefficient use of the resources of the parties. *Ham v. Swift Transp. Co.,* 275 F.R.D. 475, 488 (W.D. Tenn. 2011). Moreover, requiring individual lawsuits

would also raise the possibility that because of the relatively small individual recovery, many potential plaintiffs may not even bring their claims. *Id.* "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Given the limited size of potential financial recovery from individual suits, it is desirable to concentrate these claims in a single forum. As such, the claims of the Class are well-suited for class treatment. *Id.*

### F. The Proposed Notice Is Reasonable

To protect the rights of absent members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any particular procedure but rather requires only notice reasonably calculated to apprise interested parties of the pendency of the action affecting their interests and an opportunity to present their objections. *Id.* A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of the settlement will enable notice to go out to the members of the Class in a manner best calculated to ensure that they are alerted to the terms of the settlement. The Parties' proposed Notice – which will be sent via first class mail and email - provides the members of the Class with adequate notice of their rights under the Settlement, including information on their estimated share and how to claim it. *See* Settlement Agreement at Exhibit A. Moreover, the Settlement Claim Form is a one-page form that permits members of the State Law Classes to claim their money quickly and easily. *Id.*

**7.    CONCLUSION.**

For these reasons, the proposed Settlement should be approved, and the proposed Rule 23 settlement class should be provisionally certified.

Respectfully submitted,

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
Texas Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

**Fitapelli & Schaffer, LLP**

/s/ Frank J. Mazzaferro
By: _____
Frank J. Mazzaferro, *pro hac vice*
29 Liberty Street, 30th Floor
New York, New York, 10005
Telephone: (212) 300-0375
fmazzaferro@fslawfirm.com

**CERTIFICATE OF CONFERENCE**

This motion is unopposed.



/s/ *Frank J. Mazzaferro*
_____
Frank J. Mazzaferro

**CERTIFICATE OF SERVICE**

I served this document on all parties via the Court's ECF system.

/s/ *Frank J. Mazzaferro*
_____
Frank J. Mazzaferro